No. 13,421.

Dierks *v.* Fischer et al.
(43 P. [2d] 162)

Decided March 25, 1935.

Mr. Benjamin E. Sweet, Messrs. Blount, Silverstein & Rosner, for plaintiff in error.

Mr. Erwin L. Regennitter, for defendant in error Fischer.

*In Department.*

Mr. Justice Holland delivered the opinion of the court.

This is a money demand action—involving attachment proceedings—by Fischer, defendant in error against McNamee, the other defendant in error, in which Dierks, plaintiff in error, intervened alleging that the machinery and equipment involved was fixtures attached to his real estate and not subject to attachment as personalty be-

longing to McNamee. Judgment was for Fischer, his attachment was sustained, and intervener Dierks brings the case here on error.

The question to be determined involves the construction of an instrument in writing, identified in the record as Exhibit C, under which Dierks, the owner of the real property, permitted McNamee to take possession for mining purposes. After entering into possession, certain equipment was placed upon the property, and McNamee contracted with Fischer to conduct the mining operations. It is upon this contract that the action is based.

Exhibit C is as follows:

"For and in consideration of the sum of $1500.00 to me in hand paid by Chas. C. McNamee of the Borough of Brooklyn, City of New York, and State of New York, the receipt whereof is hereby confessed and acknowledged, I hereby give and grant unto the said Chas. C. McNamee, his heirs and assigns, the sole and exclusive right and option to purchase the following described mining property situate in Cascade and/or Jackson Mining Districts, in the County of Clear Creek, and State of Colorado, to-wit:—

"The American Queen, Good Hope, Lucky Snap, Mangrove and Nashville Lode Mining Claims, Survey Lot No. 12994, (less conflict described in deed recorded in Book 150 at Page 64 of the records in the office of the County Clerk and Recorder of Clear Creek County); the Alma, Legal Tender, Sears and Sweden Lode Mining Claims, Survey Lot No. 12995, (less conflict described in deed recorded in Book 150 at Page 64 of the records in the office of the County Clerk and Recorder of Clear Creek County); the Albermarle, New York, and Shakespeare Lode Mining Claims, Survey Lot No. 17985, and the Gold Glen Mill Site, Survey Lot No. 18092.

"And the Germantown, Elizabeth, Maud D., and Wilson Lode Mining Claims, unpatented, the location certificates whereof are found of record in Book 164 at Pages 501, 500, and 624, and Book 177 at Page 441 of the records in the

office of the County Clerk and Recorder of said Clear Creek County.

"The total purchase price of said above described premises is to be $18,000.00, and the balance of said purchase price, to-wit: the sum of $16,500.00 is to be paid within fifteen (15) days after F. L. Collom, of Idaho Springs, Colorado, shall have notified the said Chas. C. McNamee that the title to said above described premises is vested in the undersigned free and clear of all taxes, liens and encumbrances of every kind and nature whatsoever, it being understood that the said F. L. Collom is now taking steps to perfect the titles to said above described premises in the undersigned.

"The said Chas. C. McNamee shall have the right to immediately enter upon said above described premises, make improvements and prosecute work thereon, and if at any time the said F. L. Collom shall notify the said Chas. C. McNamee that it is impossible to perfect the title to said premises in the undersigned, then the said Chas. C. McNamee shall have sixty (60) days thereafter in which to remove all machinery, buildings and other improvements made upon said above described premises.

"The undersigned will, upon the payment to him of said sum of $16,500.00, the same being the balance of the purchase price of said above described premises, within fifteen (15) days after said notice by said Collom as aforesaid, at his own cost and expense, make, execute and deliver to the said Chas. C. McNamee, or to such person or company as he shall nominate, a good and sufficient warranty deed to the above described patented mining property and a bargain and sale deed to the above described unpatented mining property, together with abstracts of title showing said premises free and clear of all taxes, liens and encumbrances of every kind and nature whatsoever, except the reservations contained or to be contained in the patents issued or to be issued for said above described premises.

"In Witness Whereof, I have hereunto set my hand and seal this 15th day of May, A. D. 1930.

"August Dierks (Seal)"

Fischer, pursuant to this writing, took possession for McNamee, constructed a building, installed the machinery and equipment and entered into active operation. January, 1931, a decree, quieting title to the mining property in Dierks was entered and on April 1st, 1931, one Collom notified Dierks and McNamee of the decree, but advised them it would not be conclusive for one year, because the service of the summons was by publication. McNamee made no payment to Dierks beyond the $1,500 acknowledged on the date of Exhibit C, but remained in possession and continued operations until about May, 1932. April 21, 1932, Dierks served a notice of forfeiture—a copy of which is Exhibit A—in the following words:

"April 21, 1932

"Mr. Charles C. McNamee,
"101 Ulster Atlantic Beach,
"Long Island, New York.
"Dear Sir:

"You are hereby notified that because of your failure to make payments on the purchase price of the Gold Glenn Group of mining claims belonging to me, I have elected and do hereby elect to declare your option and right to purchase forfeited on May 14, 1932, unless the balance of the purchase price of $16,500 and $265 that I have paid in taxes shall be paid to me in cash on or before May 14, 1932."

Fischer disconnected the improvements and started the attachment suit on May 14, 1932, Dierks being appointed custodian after signing the following, Exhibit D:

"I hereby consent to the attachment by W. C. Fischer for his wages and other claims against Charles C. McNamee of the compressor and other removable fixtures belonging to the said McNamee and situate on the Gold Glen group of mining claims belonging to me and that

the said compressor may remain on said Gold Glen group pending judicial proceedings to satisfy said claims.

"But the right of the said Charles C. McNamee to the possession of the said Gold Glen group shall terminate on May 14, 1932, and shall not be considered as extended hereby.

"If appointed custodian by the sheriff under a levy made by him in a suit by the said W. C. Fischer against the said Charles C. McNamee I will accept the compensation (not less than $2.50 a day) allowed by the court and I will faithfully perform the service.

"Idaho Springs, Colo., May 11, 1932.

"August Dierks

"In consideration of the foregoing I waive the right to remove the said compressor from the said Gold Glen group at the time of levy under a contemplated attachment against the said Charles C. McNamee.

"W. C. Fischer."

The improvements that were attached are described in the sheriff's return and there is no dispute about the items.

Counsel for Dierks contends that Exhibit C, at the time of its making, was an executory contract and not a mere option to purchase, and the improvements, upon which the attachment was levied, placed on the property by McNamee, were permanent improvements, became a part of the realty, and were not subject to attachment as personal property; further, if it was a mere option to purchase the option was exercised and became a contract of sale before the levy, and in any event the attached property was a part of the realty owned by Dierks.

Counsel for Fischer argues that Exhibit C was not an executory contract when made; that the option contained therein was never exercised and therefore did not become a contract of sale by acceptance; that the property levied upon was trade fixtures placed on Dierks' property by McNamee with the intention and right of removal; and that it was the subject of levy under writ of attachment.

It would unduly prolong this opinion and serve no good purpose, to narrate the evidence. Any label that may be given to Exhibit C does not change its wording or effect. A careful reading of its provisions, considered with the other exhibits, dispels any doubt of its character. Dierks, for a valuable consideration, gave McNamee possession, the right to make improvements and the right to purchase. The only person obligated to do anything was Dierks, and he was bound by his signature. McNamee, for $1,500 bought a privilege; he signed nothing and avoided all obligations. Without some obligation on his part, we cannot conceive of an agreement of sale and purchase. The instrument bears all the earmarks of an option contract. Dierks, by his actions, gives us his own interpretation of the contract. He recognized and respected the right to possession, and to make improvements, that he had given to McNamee; also the conditional limit he had fixed thereon by the care, with which he guarded against an extension of McNamee's right to possession beyond May 14th, 1932, by Exhibit D. In Exhibit A, he irrefutably fixed the contract, Exhibit C, as an option by these words, "I have elected and do hereby elect to declare your option and right to purchase forfeited on May 14th, 1932."

The claim of Dierks, that the option was exercised by McNamee and became a contract of sale, is not borne out by the record. There is no evidence that McNamee ever paid any part of the purchase price, as such; that he asked for, or received any extension of time to pay, or that he assumed any obligation in connection with the option. The contract did not require him to put any improvements on the property. What he did in that respect was voluntary. The character of the occupancy is the determining feature upon the question of the right to remove improvements. Exhibit C unmistakably satisfied any question as to nature of the occupancy. If Dierks could not deliver title, McNamee "shall have sixty days thereafter in which to remove all machinery, build-

ings and other improvements made upon said above described premises."

▮ The trial court said, "It seems to be a question of law more than anything else, there doesn't seem to be much dispute of the facts," to which we agree. The court held that this machinery did not become a part of the real property, and that it was subject to attachment.

The judgment was right and is affirmed.

MR. CHIEF JUSTICE BUTLER and MR. JUSTICE BOUCK concur.